Bell, J.
The agreement which resulted in the construction of the driveway came about, according to the testimony of Austin Schütz, as follows:
“A. One evening Mr. Ploom said, ‘Aust, how about making this drive in the center; you pay half and I’ll pay half’ and I said, ‘O. K.’ and it was done and I paid my share and he paid his. ’ ’
It is conceded by defendants that if their use of the driveway, and that of their predecessors in title, pursuant to this agreement, was permissive only such use under the law of Ohio could not ripen into an ease *481 ment. Pavey v. Vance, 56 Ohio St., 162, 46 N. E., 898; Railroad Co. v. Village of Roseville, 76 Ohio St., 108, 81 N. E., 178; Pennsylvania Rd. Co. v. Donovan, 111 Ohio St., 341, 145 N. E., 479. Defendants’ contention is that there was an adverse use under a claim of right which ripened into an easement after 21 years.
This precise question is before this court for the first time. However, the case of Rubinstein v. Turk, 29 Ohio Law Abs., 653, decided by the Court of Appeals for the Eighth Appellate District, presented the identical problem. In that case, the parties’ predecessors in title acquired adjoining sublots in 1909. Both sub-lots were improved with dwellings. Shortly after-wards, the owners of the two lots agreed to construct a driveway for their, joint use, substantially one-half of which was to be on each lot. The agreement was not in writing. Pursuant to the agreement, the driveway was constructed and the owner of each lot paid one-half of the cost of construction. More, than 21 years later, differences arose between the owners and defendant attempted to construct a fence across the driveway. In granting an injunction to the plaintiff, the majority of the Court of Appeals held :
“When * *'* the owners * * * constructed a- joint driveway by agreement between themselves, each owner thereafter claimed the right of an easement in the part of the driveway on his neighbor’s lot, in consideration of having given his neighbor a similar easement on his own lot. Thereafter * * * the ‘possession and use’ of each owner was under a ‘claim of right’ and therefore adverse. This adverse possession continued for more than 21 years and therefore ripened into a prescriptive right.”
The reasoning of the Court of Appeals was based largely on the definition of “hostile use” set out as follows by this court in Kimball v. Anderson, 125 Ohio St., 241, 244, 181 N. E., 17:
“To establish hostility it is not necessary to show *482 that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate; the facts which prove hostility might greatly differ in different cases, and it has been held in many cases that it is sufficient if the use is inconsistent with the rights of the title owner and not subordinate or subservient thereto. Hostile use is sometimes described as possession and use under a claim of right. ’ ’
The Kimball case also involved a driveway between two lots. It differs from the present case, however, in that the driveway there was constructed by a single owner of the two lots, followed by a sale of one lot by warranty deed without a reservation of that part used for the driveway. This court held that the warranty deed did not prevent the grantor’s subsequent use of the driveway from being adverse.
The acquisition of a prescriptive right in a common driveway has been decided by courts of last resort in several jurisdictions outside Ohio. The cases are collected in an annotation in 98 A. L. R., 1098, following the report of Johnson v. Whelan, 171 Okla., 243, 42 P. (2d), 882, 98 A. L. R., 1096.
The facts set out as follows in the Johnson case appear to be almost identical with those of the present case:
“Plaintiff and defendant own adjacent lots in Oklahoma City. Plaintiffs own the west lot and defendant the east lot. Both lots face the north, and in 1908 were improved with substantial residential buildings on the northerly portion and smaller buildings to rear on the south. In 1908 one Binns owned the west lot and one Collet the east lot. These owners jointly constructed a concrete paved driveway on their medial line, from the street on the north to small buildings on rear, each furnishing half of the expense. Apparently each intended to furnish half the ground for the *483 seven-foot driveway. However, a survey in 1931 showed some six or nine inches more on the east than on the west lot. No writing was executed'by either owner, nor by subsequent owners, granting to the other any rights or privileges in the lot of the other.
“ * * * At all times the driveway has been used jointly by the occupants of the two lots. In 1931, defendant built an additional strip of pavement on her side, and threatened to construct a wall or fence along the lot line, which would have left insufficient room for a driveway between the house of the plaintiffs and the property line. Plaintiffs brought this suit to enjoin the defendant from interfering with their use of the driveway.”
The Supreme Court of Oklahoma, in granting the injunction, held:
“While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the construction of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right in the portion of the way on the other’s lot. And from such use for 15 years the law raises a presumption of the grant of an easement.”
Similar conclusions have been reached in cases in Arkansas, Georgia, Iowa, Kentucky, Maryland, Massachusetts, Minnesota, Nebraska, New Jersey, New York and South Carolina. See 98 A. L. R., 1098, and 27 A. L. R. (2d), 332.
We are not unaware of contrary holdings in Michigan and Illinois in the cases of Wilkinson v. Hutzel, 142 Mich., 674, 106 N. W., 207; Banach v. Lawera, 330 Mich., 436, 47 N. W. (2d), 679; and Lang v. Dupuis, 382 Ill., 101, 46 N. E. (2d), 21. But we believe the rule of Johnson v. Whelan, supra, and Rubinstein v. Turk, *484 supra, represents the majority view in this country and the better-reasoned rule.
We believe it is unreasonable to assume that the owners of these properties, at the time this driveway was constructed and the use thereof began, each felt that he was using his half as a matter of right and the other’s half merely by permission. On the contrary, the nature and permanence of the improvement, that it was constructed of concrete, and that it was constructed on what the owners considered to be the boundary line between their properties are more consistent with a claim of right on the part of each than with a day-to-day permissive use. We hold, therefore, that the use in this case was under a claim of right and as such was adverse and not permissive. Such use being for more than 21 years, it follows that an easement for the common use of this driveway has been acquired by both parties.
In the case of Yeager v. Tuning, 79 Ohio St., 121 (paragraph two of the syllabus), 86 N. E., 657, 128 Am. St. Rep., 679, cited by plaintiffs, this court recognized that an easement can be created by prescription. But there had been a use in that case for only three years and the court was not called upon to decide whether the use was sufficient to create a prescriptive easement.
Similarly, the case of Pennsylvania Rd. Co. v. Donovan, supra, is distinguishable on the facts from the present case. In that case the use was purely permissive, there being no mutual dedication of land for a common use.
The judgment of the Court of Appeals is hereby affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart and Tart, JJ., concur.
Zimmerman and Stewart, JJ., dissent.